PETROPLUS, JUDGE:
The Claimant, State Farm Mutual Automobile Insurance Company, after paying a collision loss in the amount of $740.00 to Roy Bourne and George Keczan, doing business as General Hydraulic Service, under coverage provided in its policy of insurance issued to General Hydraulic Service, said loss representing damages sustained by a pick-up truck in a collision with a vehicle of the State Road Commission of West Virginia, now seeks reimbursement from the State Road Commission (West Virginia Department of Highways) as subrogee.
*152 All material facts were agreed upon by stipulation between counsel for the respective parties, and briefly are as follows:
1. The pick-up truck, owned by a partnership composed of Roy Bourne and George Keczan, doing business as General Hydraulic Service, was insured against collision damage by the State Farm Mutual Automobile Insurance Company, Claimant herein.
2. The truck was damaged by a collision caused by the negligent operation of a road grader owned by the State Road Commission and driven by one Howard R. White, as agent and employee of the State Road Commission.
3. The accident occurred on November 14, 1967, on West Virginia Route 7, north of Welch, McDowell County, West Virginia, and Howard R. White, who was acting within the scope of his employment by the State, admitted his faulty driving to the investigating officer. Liability is not disputed.
4. The Respondent, State Road Commission, at the time of the accident carried public liability insurance with the Buckeye Union Casualty Company on all of its vehicles, notwithstanding its constitutional immunity from liability or suit in the regular Courts of our State.
5. Roy Bourne and George Keczan had an adequate legal remedy in the Courts of record of our State for their property loss caused by the State’s negligence, and likewise the Claimant had a remedy as subrogee in the event it paid for the loss under its coverage.
6. George Keczan, who was driving the vehicle involved in the accident with the State’s road grader, received serious personal injuries in the accident and settled his claim in the amount of $3000.00, accepting said amount from the Buckeye Union Casualty Company in full settlement of his personal injuries. At the time of settlement, he delivered a Release to the Buckeye Union Casualty Company which released any and all claims that he had against the Respondents. He also received a check in the amount of $100.00 for property damage to the truck owned by the partnership (said amount representing the deductible portion of the collision loss which was not covered by the Claimant’s insurance policy), the total property loss being in the amount of $840.00.
*153 7. The check in the amount of $100.00, payable to the order of the partnership known as General Hydraulic Service is dated September 22, 1969, and carries the notation on the face thereof “In full and final payment of all claims arising from the accident of November 14, 1967”.
8. Counsel were unable to inform the Court of the contents of the Release executed by George Keczan, and particularly whether the Release also covered property damages. It was agreed that a Release of some kind was signed by Mr. Keczan and exchanged for the checks at the time of settlement.
9. For some unexplained reason the Buckeye Union Casualty Company procrastinated and finally refused to reimburse the Claimant subrogee for the property damage, although it admitted liability for the accident and settled the personal injury claim in whole and the property damage claim in part by payments under the coverage of its insurance policy. Correspondence between the two insurance companies indicates that settlement of the property damage claim was being considered and delayed because negotiations involving the personal injury claim had not been completed. The ultimate refusal to pay for property damage was based on the lapse of the two year Statute of Limitations.
10. Claimant filed its Notice of Claim in the amount of $840.00 in this Court on November 12, 1969, two days before the Statute of Limitations was to expire. No civil action was instituted by the Claimant against Buckeye or the Respondents for the recovery of the subrogated amount of property damage in the regular Courts of the State.
On this stipulation of agreed facts this Court is petitioned to reimburse the Claimant on the portion of the collision loss it paid under its insurance policy with Bourne and Keczan, who are not parties in this Court. The Court of Claims was established to recommend to the Legislature payment of claims which the State in equity and in good conscience should pay, notwithstanding the sovereign immunity of the State, and provided that claims would be tenable in a Court of record but for the defense of constitutional immunity.
When the State carries public liability insurance to protect its citizens and others against the negligence or misconduct of *154 its agents and employees in the operation of State owned vehicles, the State in effect provides a means of compensation without resort to the legislative grace which gave rise to the Court of Claims. It is also an effectual waiver of the defense of constitutional immunity, otherwise the insurance coverage would be meaningless and unprotective of the rights of those who may be injured by the irresponsible acts of the State’s agents and employees.
The Claimant had a full and complete remedy in a Court of record, and by neglecting to file a civil action against the insured driver of the State operated vehicle in a case where liability was not disputed, it now seeks after such neglect full reimbursement on its subrogated claim from the taxpayers of the State of West Virginia. Had it filed a civil action, the Claimant would have received full restitution. The Claimant not only knew the driver was insured but actually made efforts by correspondence to collect its claim from the State’s insurer. Buckeye Union Casualty Company delayed and evaded payment of the full property claim until the tolling of the Statute of Limitations, although it did acknowledge and paid a part of the claim by issuing a check for the sum of $100.00. Buckeye’s conduct in this matter was not only reprehensible but appears to have been designed to foist the payment of an admitted liability upon the taxpayers of West Virginia, although it had received a premium from the State for the insurance that it had issued.
The Claimant, as an innocent party, stands to lose and the wrong-doer has been unjustly enriched; this may give rise to some form of equitable relief for the Claimant elsewhere. This Court is of the opinion that to acknowledge and accept a sub-rogation claim under the circumstances here presented would not satisfy the mandate to this Court that only claims be paid from public revenues which constitute a moral obligation of the State.
For the foregoing reasons, the Court is of the opinion to and does hereby disallow the subrogation claim.
Claim disallowed.